# IN THE MATTER OF JULIUS BRAUN, AN ATTORNEY AT LAW.

Argued May 23, 1972—Decided July 10, 1972.

Mr. *Vincent A. Grasso* argued the cause for Ocean County Ethics Committee (Mr. *Dante J. DeRogatis,* on the brief).

Mr. *Robert F. Novins* argued the cause for respondent (Messrs. *Novins, Novins and Farley,* attorneys).

PER CURIAM. The Ocean County Ethics Committee filed a presentment with this Court finding respondent guilty of a breach of *Canon* 27 of the Canons of Professional Ethics,[1] forbidding the solicitation of professional employment in any direct or indirect manner.

■ Respondent and his son, who is not here involved, had for some years practiced as a partnership in an office located in Lakewood. They determined to open a branch office in Brick Township, also in Ocean County. Cards were prepared announcing the opening of the new office and these were mailed sometime in the summer of 1971 to approximately one thousand persons. Of the recipients of these notices, about one hundred were office clients. The remaining nine hundred were residents of the general area in Brick Township in which the branch office was to be located. Their names were taken from a telephone directory of an unusual sort, that lists telephone subscribers by successive street and

---

[1]As of September 13, 1971 this Court adopted, with certain changes, the Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association, to supersede the former Canons of Professional Ethics. The Disciplinary Rule which now prohibits conduct previously forbidden by *Canon* 27 reads as follows:

A lawyer or law firm shall not use professional cards, professional announcement cards, office signs, letterheads, telephone directory listings, law lists, legal directory listings, or similar professional notices or devices, except that the following may be used if they are in dignified form:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A brief professional announcement card stating new or changed associations or addresses, change of firm name, or similar matters pertaining to the professional office of a lawyer or law firm, which may be mailed to lawyers, clients, former clients, personal friends and relatives. It shall not state biographical data except to the extent reasonably necessary to identify the lawyer or to explain the change in his association, but it may state the immediate past position of the lawyer. It may give the names and dates of predecessor firms in a continuing line of succession. It shall not state the nature of the practice except as permitted under *DR* 2-105. [*DR* 2-102(A)(2)]

block numbers in a given section of a municipality. Respondent admittedly did not know these people nor had he had any previous professional relationship with any of them.

*Canon 27,* in pertinent part, reads as follows:

It is unprofessional to solicit professional employment by circulars, advertisements, through touters or by personal communications or interviews not warranted by personal relations. Indirect advertisements for professional employment such as furnishing or inspiring newspaper comments or procuring his photograph to be published in connection with causes in which the lawyer has been or is engaged, or concerning the manner of their conduct, or disclosing the amount of a claim or settlement, the magnitude of the interest involved, the importance of the lawyer's position, and all other like self-laudation, offend the traditions and lower the tone of our profession and are reprehensible; but the customary use of simple professional cards is not improper.

Respondent admits his violation. In extenuation he pleads ignorance of the canon and says he believes that he himself has often received similar announcement cards which he had supposed had been circulated promiscuously. We trust he is mistaken.

*DR* 2–102, in part quoted in footnote 1 above, is more explicit than was *Canon 27* as to those persons to whom announcements of this sort may be sent. The categories are five in number: lawyers, clients, former clients, personal friends and relatives. They may be sent to no one else. We suspect that the cards respondent has received and to which he refers have been sent to him as a lawyer by some other lawyer or law firm. This practice has always been proper. Announcements of this sort may be freely disseminated among the members of the bar as a matter of information. Thus it is entirely proper for a lawyer to publish such a notice in the New Jersey Law Journal, a publication circulating only among members of the profession, but quite improper for him to do so in a newspaper of general circulation.

*Canon 27* has always been thought to mean what *DR* 2–102 (A)(2) now expressly states. In *Formal Opinion* 301(1961) of the Committee on Professional Ethics of the American

Bar Association, in discussing the kind of announcement cards that might properly be mailed by attorneys returning to private practice from government service, the Committee said,

It [the announcement card] should go to attorneys and former clients, and to other persons with whom the returning attorney has a personal relationship such as to make it clear that they would be interested in knowing that he is back; but not, of course, to persons with whom he has had no professional dealings or relations and to whom such an announcement would be merely a suggestion that he be employed.

The prohibition against advertising and soliciting by lawyers is of ancient origin. The young men who came up to London in the early days to study at the Inns of Court were generally sons of well-to-do parents. They did not need to earn a living and they brought with them the disdain for all forms of trade and for the competitive spirit characteristic of mercantile endeavor that then characterized the upper classes. *Drinker, Legal Ethics* 210. Several reasons account for the persistence of these rules of professional conduct in a far different age. First and foremost is the fact that the practice of law is a profession and not a business — a distinction of which all lawyers are quietly proud. "This [membership in a profession] is not a fancied conceit, but a cherished tradition, the preservation of which is essential to the lawyer's reverence for his calling — as well as to his regard and esteem for his fellows at the bar." *Drinker, supra,* at 211.

In the second place to permit soliciting or advertising would not be in the public interest. The least capable lawyers would be apt to announce the most extravagant claims and then resort to the worst means to make them good. *Code of Professional Responsibility, American Bar Association Special Committee on Evaluation of Ethical Standards, Final Draft* (1969) 33–34.

The traditional ban against advertising by lawyers, which is subject to certain limited exceptions, is rooted in the public interest. Competitive advertising would encourage extravagant, artful, self-laudatory brashness in seeking business and thus could mislead the layman. Furthermore, it would inevitably produce unrealistic expectations in particular cases and bring about distrust of the law and lawyers. Thus, public confidence in our legal system would be impaired by such advertisements of professional services. The attorney-client relationship is personal and unique and should not be established as the result of pressures and deceptions. History has demonstrated that public confidence in the legal system is best preserved by strict, self-imposed controls over, rather than by unlimited, advertising. [*Code of Professional Responsibility, supra*, at p. 15]

Quite recently this Court referred to our Advisory Committee on Professional Ethics for its review, certain announcements that had been sent out by lawyers. In the course of its opinion the Committee noted that under *DR* 2-102 (A) (2) ". . . a brief professional announcement card giving new or changed associations or addresses may be mailed [but only] to lawyers, clients, former clients, personal friends and relatives . . . ." *N. J. Advisory Committee on Professional Ethics, Opinion* 235, 95 *N. J. L. J.* 271 (1972). The same Committee has on many occasions dealt with various other aspects of the general subject of improper solicitation and advertising. See, for example, *Opinions* 14, 86 *N. J. L. J.* 729 (1963) ; 25, 87 *N. J. L. J.* 19 (1964) ; 38, 87 *N .J. L. J.* 190 (1964) ; 49, 87 *N. J. L. J.* 465 (1964) ; 75, 88 *N. J. L. J.* 357 (1965) ; 109, 90 *N. J. L. J.* 257 (1967) ; 159, 92 *N. J. L. J.* 721 (1969) ; 215, 94 *N. J. L. J.* 600 (1971) ; 219, 94 *N. J. L. J.* 997 (1971).

In determining appropriate punishment it is fair to concede that Canon 27 was not as clear and explicit as it might have been and furthermore that respondent's transgression does not involve any moral shortcoming. His "sin has been against good taste rather than good morals." *In re Schwarz,* 231 *N. Y.* 642, 132 *N. E.* 921, 923 (1921) (dissenting opinion). The rule that has been transgressed is really a

rule of professional etiquette rather than of ethics. *Drinker, supra,* 211. Nevertheless such crass and insensitive conduct merits censure and respondent is herewith reprimanded.

*For reprimand*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN.—7.

*Opposed*—None.